UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------- X

THOMAS GESUALDI, LOUIS BISIGNANO,
MICHAEL O'TOOLE, MICHAEL C. BOURGAL,
DARIN JEFFERS, JOSEPH A. FERRARA, SR.,
FRANK H. FINKEL, MARC HERBST, THOMAS          **MEMORANDUM & ORDER**
F. CORBETT, AND ROBERT G. WESSELS, AS
TRUSTEES AND FIDUCIARIES OF THE LOCAL         21-CV-6097 (KAM)(RER)
282 WELFARE TRUST FUND, THE LOCAL 282
PENSION TRUST FUND, THE LOCAL 282
ANNUITY TRUST FUND, AND THE LOCAL 282
JOB TRAINING TRUST FUND,

                    Plaintiffs,

     -against-

ZANO INDUSTRIES, INC.,

                    Defendant.
--------------------------------------X

**MATSUMOTO, United States District Judge:**

          Plaintiffs Thomas Gesualdi, Louis Bisignano, Michael

O'Toole, Michael C. Bourgal, Darin Jeffers, Joseph A. Ferrara, Sr.,

Frank H. Finkel, Marc Herbst, Thomas F. Corbett, and Robert G.

Wessels, as Trustees and fiduciaries of the Local 282 Welfare Trust

Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust

Fund, and the Local 282 Job Training Trust Fund (collectively, the

"Funds" or "Plaintiffs"), brought this action against Zano

Industries, Inc. ("Defendant"), pursuant to Section 502 of the

Employee Retirement Income Security Act of 1974 ("ERISA"), 29

U.S.C. §§ 1132 and 1145 and the Labor Management Relations Act of

1947, 29 U.S.C. § 185, seeking to recover certain unpaid and

estimated contributions due and owing to employee benefit plans. (*See generally* ECF No. 1, Complaint ("Compl.").)  In addition, Plaintiffs seek interest on those unpaid, estimated, and late-paid contributions, liquidated damages, reasonable attorney's fees and costs.[1]  (*Id.* ¶¶ 3-4.)

Plaintiffs filed this action on November 2, 2021. (ECF No. 1, Compl.)  Plaintiffs properly served the summons and complaint on Defendant by personally serving Defendant's designated authorized agent in the Office of the Secretary of State of New York and filed proof of service.  (ECF No. 5, Affirmation of Service on November 4, 2021.)  When Defendant failed to respond to the complaint, Plaintiffs requested, and the Clerk of Court entered a certificate of Defendant's default pursuant to Federal Rule of Civil Procedure 55(a) on December 2, 2021.  (ECF Nos. 6, Request for Certificate of Default on November 29, 2021; 7, Entry of Default.)  Plaintiffs now move for entry of a default judgment pursuant to Federal Rule of Civil Procedure 55(b).  (ECF No. 8, Motion for Default Judgment ("Mot").)  Plaintiffs served Defendant

---

1 In their Complaint, Plaintiffs also requested the Court order Defendant to pay audit fees, submit to an audit for all unaudited periods, and provide remittance reports for all months for which such reports have not been submitted.  (ECF No. 1, Compl., 8.)  Plaintiffs, however, no longer request such relief in their motion for default judgment, so the Court considers those requests abandoned. *See LoSacco v. City of Middletown*, 71 F.3d 88, 92 (2d Cir. 1995)(appellants can be deemed to have abandoned issues they fail to raise before the district court); *see also Bozeman v. United States*, 780 F.2d 198, 199 n. 4 (2d Cir.1985) ("Mrs. Bozeman did not raise or brief that issue in this appeal and we therefore treat that claim as abandoned."); *Austin v. Ford Models, Inc.*, 149 F.3d 148, 156 (2d

as required by Local Civil Rule 55.2(c).  (ECF No. 8-7, Certificate of Service.)

For the reasons below, the Court grants Plaintiffs' motion for default judgment and orders that judgment be entered against Defendant for damages totaling $1,009,409.12, plus $300.05 in per diem interest, commencing August 18, 2022 until entry of judgment after which date post-judgement interest will accrue.[2] (ECF No. 16, Second Supplemental Declaration of Michael S. Adler ("2d. Supp. Adler Decl.").)  Plaintiffs are directed to serve a copy of this Memorandum and Order and the Judgment on Defendant at its last known address, and file proof of service on ECF within two business days of the date of this Order.  The Clerk of Court is respectfully requested to enter judgment and to close this case.

## BACKGROUND

The pertinent facts are drawn from the uncontested allegations in Plaintiffs' complaint, as well as documents incorporated by reference, and are taken as true for the purposes of deciding this motion.  *See Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105,

---

Cir. 1998)(considering claims omitted from an amended complaint to be abandoned).
2 The judgment amount, of $1,009,409.12, which will explained in this opinion, is calculated as follows: $608,436.50 due in unpaid and estimated contributions; $260,079.91 in total interests due on unpaid, estimated, and late-paid contributions; $300.05 *per diem* interest beginning on August 18, 2022; $131,888.21 in liquidated damages on unpaid and estimated contributions; and $8,625 in attorney's fees and costs.

108 (2d Cir. 1997) (deeming all well-pleaded allegations in a complaint admitted on a motion for a default judgment); *Gesualdi v. Interstate Masonry Corp.*, No. 12-CV-0383, 2014 WL 1311709, at *3 n.1 (E.D.N.Y. Mar. 28, 2014) (relevant collective bargaining agreements were deemed incorporated by reference into the complaint.)

ERISA is a comprehensive statutory regime that regulates employee retirement plans, *Trs. of Local 138 Pension Tr. Fund v. F.W. Honerkamp Co. Inc.*, 692 F.3d 127, 128–29 (2d Cir. 2012) (citing ERISA § 2 et seq., 29 U.S.C. § 1001 et seq.). ERISA was designed to "ensure that employees and their beneficiaries would not be deprived of anticipated retirement benefits by the termination of pension plans before sufficient funds have been accumulated in the plans." *Id.* at 129. One type of plan governed by ERISA is relevant here: the multiemployer pension plan which allows multiple employers to "pool contributions into a single fund that pays benefits to covered retirees . . . for one or more contributing employers." *Id.*

Plaintiffs are the trustees of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund and the Local 282 Vacation and Sick Leave Trust Fund (the "Funds"), which are employee benefit plans and multi-employer plans within the meaning

4

of ERISA.  (ECF No. 1, Compl. at ¶¶ 3-4.)  The Funds are governed by a Restated Agreement and Declaration of Trust, effective as of July 1, 1999, as amended (the "Trust Agreement").  (*Id.* ¶ 5.) Defendant is a signatory to the Metropolitan Trucker's Association (the "MTA") and collective bargaining agreement between MTA and the Funds (the "CBA"), that requires Defendant to make contributions to the Funds on behalf of employees who are covered by the CBA.  (*Id.* ¶ ¶ 9, 10.)  The Trust Agreement is incorporated into the CBA and provides that Defendant is also bound to the Trust Agreement.  (*Id.* ¶ 12.)

Under the CBA, employers are required to submit remittance reports and pay benefit contributions to the Funds according to rate schedules set forth in the CBA for all work performed by their employees.  (*Id.* ¶ 11.)  Each remittance report was signed by a representative of Defendant and included a statement immediately above the signature line that said: "BY SIGNING THIS REPORT YOU AGREE TO ACCEPT THE TERMS OF THE CURRENT LOCAL 282 INDUSTRY COLLECTIVE BARGAINING AGREEMENT COVERING THE WORK PERFORMED BY YOUR EMPLOYEES."  (ECF No. 8-4, Declaration of Joseph Puccio, Exh. E, Remittance Reports.)

The Trust Agreement provides that if Defendant fails to remit contributions by the date due, Defendant is liable to the Funds for (i) the delinquent contributions; (ii) interest at the

rate of 1.5% per month (18% per year) from the first day of the month when the payment was due through the date of payment; (iii) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages of 20 percent of the delinquent contributions; and (iv) the Funds' attorney's fees and costs. (*Id.*, Exh. A, The Trust Agreement.)

In their motion for default judgment, Plaintiffs seek damages for unpaid contributions which they calculate using the amounts reflected in remittance reports submitted by Defendant, interest, liquidated damages, attorney's fees, and costs. (ECF Nos. 11, Supplemental Joseph Puccio Declaration ("Supp. Puccio Decl."); 16, 2d. Supp. Adler Decl.) Specifically, Plaintiffs allege that while being bound to CBAs from 2012 to 2023 and submitting remittance reports from June 2017 through February 2022, and May 2022 through June 2022, Defendant did not pay or underpaid contributions due based on submitted remittance reports. (ECF Nos. 1, Compl. ¶¶ 12, 19-20; 8-6 Mot. at 7-8.) For the months of October 2020 through February 2022 and May 2022 through June 2022, Defendant failed to pay the contributions owed for certain weeks, totaling $520,882.49 in unpaid contributions. (ECF Nos. 1, Compl. ¶ 23; 16, 2d. Supp. Adler Decl., ¶ 23) Defendant also did not submit remittance reports for the months of March 2022 and April 2022, which pursuant to the Trust Agreement, means Defendant owes

an estimated monthly contribution, totaling $87,554.00 for those months.  (ECF Nos. 1, Compl. ¶¶ 24, 25; 16, 2d. Supp. Adler Decl., ¶ 23).  Defendants also paid contributions late during certain pay periods between 2017 and 2021, accruing interest on the late payments.  (ECF No. 11, Puccio Decl. ¶ 32.)  According to Plaintiffs' uncontested submissions, the total interest due, calculated through August 17, 2022 is $260,079.91, with a per diem of $300.05 per diem interest beginning on August 18, 2022, and running through the date of payment.  (ECF No. 16, 2d. Supp. Adler Decl., ¶¶ 10, 15.)

## PROCEDURAL HISTORY

In support of their motion for an entry of judgment and damages, Plaintiffs initially submitted the following documents: (1) Statement of Amounts Due dated January 20, 2022 (ECF No. 8-3, Statement of Amounts Due); (2) Declaration of Joseph Puccio, dated January 19, 2022, a member of the Collections Department of the Funds (ECF No. 8-4, Declaration of Joseph Puccio); and (3) Declaration of Michael S. Adler, dated January 20, 2022, an attorney with the law firm of Cohen, Weiss and Simon LLP, counsel to Plaintiffs, with exhibits attached (ECF No. 8-5, Declaration of Michael S. Adler).  By orders dated July 13, 2022 and August 17, 2022, the Court requested updated damages and the Plaintiffs submitted the following documents: (1) Supplemental Declaration of

Joseph Puccio, dated August 2, 2022 (ECF No. 11, Supplemental Joseph Puccio Declaration ("Supp. Puccio Decl.")); (2) Supplemental Declaration of Michael S. Adler, dated August 4, 2022 (ECF No. 12, Supplemental Declaration of Michael S. Adler); and (3) Second Supplemental Declaration of Michael S. Adler, dated August 18, 2022, with exhibits attached (ECF No. 16, Second Supplemental Declaration of Michael S. Adler ("2d. Supp. Adler Decl.")).  All submissions to the Court were served on Defendants and proof of service was filed with the Court.  Defendants have not responded.

## DISCUSSION

### I.   Entry of Default Judgment

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation).  First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant.  Fed. R. Civ. P. 55(b)(2).

The Clerk entered a default against Defendant on December 2, 2012. (ECF No. 7, Clerk's Entry of Default on December 2, 2021.) The Court first considers whether Plaintiffs have submitted sufficient facts for the Court to find that Defendant's conduct warrants entry of default judgment.

In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003).

First, the failure by Defendant to respond to the Complaint demonstrates the default was willful. *See, e.g., Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding the defendants' non-appearance and failure to respond "indicate willful conduct" in the context of a default judgment). Defendant had sufficient notice of the present litigation because it was properly served

with a summons and Complaint, which were left with an authorized agent with the Office of the Secretary of State on November 4, 2021.  (ECF No. 5, Affirmation of Service on November 4, 2021.) The motion for default judgment and supporting papers were also served via mail.  (ECF Nos. 8, 13, 17, Certificates of Service dated January 21, 2022, August 4, 2022, August 18, 2022.) Furthermore, Plaintiff notified the Court that the parties had discussed, but failed to arrive at a settlement.  (ECF Nos. 10, 14, 15, Status Reports dated July 26, 2022, August 4, 2022, August 17, 2022.)

Notwithstanding this notice and service, Defendant did not respond to the Complaint, did not appear, and has not in any way attempted to defend itself before this Court, thus constituting willfulness in the context of default judgment*.  See, e.g., Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. 14-CV-946, 2015 WL 1299259, at *6 (E.D.N.Y. Mar. 23, 2015) (adopting report and recommendation) ("Defendant has not responded to Plaintiffs' motion for default judgment, has not appeared in this action, and has not communicated with the Court in any way.  Accordingly, Defendant's failure to answer the Complaint and to respond to the instant motion is sufficient to establish willfulness.").

Second, the Court cannot conclude there is any meritorious defense to the allegations because Defendant did not

appear and did not assert or present evidence of any defense. "[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment. If a defendant presents no defense to the court, the allegations in the complaint are deemed admitted." *Id.* (quotations and citations omitted); *see, e.g., Indymac Bank*, 2007 WL 4468652, at *1 ("[T]he Court is unable to determine whether . . . defendants have a meritorious defense to Plaintiff's allegations because they have presented no such defense to the Court.").

Third, the Fund would be prejudiced if the motion for default judgment were denied, "as there are no additional steps available to secure relief in this Court." *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008), report and recommendation adopted, Dkt. No. 18 (Jan. 26, 2009); *see also Sola Franchise Corp.*, 2015 WL 1299259, at *15 (finding the prejudice element was met because "[w]ithout the entry of a default judgment, Plaintiffs would be unable to recover for the claims").

As a result, all three factors establish grounds for entry of a default judgment. The Court now turns to the damages sought and other relief to be awarded in such a judgment.

## II.  Liability

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).  A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d. Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), report and recommendation adopted, 2016 WL 1258482 (Mar. 29, 2016). "Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (citation and quotations omitted); *see also 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice and Procedur*e § 2688.1 (3d ed. 2017).

Based on the undisputed allegations in the Complaint, and construing them as true, the Court finds that Plaintiff has asserted valid claims under ERISA.  ERISA requires employers to pay benefit contributions pursuant to a valid collective bargaining agreement.  29 U.S.C. § 1145.  Specifically, Section 1145 states that in relevant part:

> [e]very employer who is obligated to make contributions
> to a multiemployer plan under the terms of the plan or
> under the terms of a collectively bargained agreement
> shall, to the extent not inconsistent with the law, make
> such contributions in accordance with the terms and
> conditions of such plan or such agreement.

29 U.S.C. § 1145.

Here, Plaintiffs have asserted that Defendant entered
into CBAs with the Funds and failed to remit benefit contributions
owed under the CBAs.  Thus, Plaintiffs have sufficiently alleged
facts supporting the elements of a claim for unpaid contributions
and accompanying liability under ERISA against the Defendant.

## III. Damages Under ERISA

Section 502(g)(2) of ERISA provides that a fiduciary
seeking to enforce provisions of an employee benefit plan is
entitled to recover:

> (A) the unpaid contributions, (B) interest on the unpaid
> contributions, (C) an amount equal to the greater of –
> (i)interest on the unpaid contributions, or (ii)
> liquidated damages provided for under the plan in an
> amount not in excess of 20 percent... of the [unpaid
> contributions], (D) reasonable attorney's fees and costs
> of the action...

29 U.S.C. § 1132(g)(2).

The Court will determine damages based on the Plaintiff's
documentary evidence, including its audit reports, collection
reports, and estimated calculations.  On August 4, 2022, Joseph
Puccio, the Collection Department official for the Funds, submitted

13

a Supplemental Declaration providing this Court with the most updated calculations of damages to the Court and Michael Adler, Plaintiffs' counsel, confirmed with the Funds' Office and this Court that the contributions reflected in Puccio's Supplemental Declaration remain due. (*See* ECF Nos. 11, Supp. Puccio Decl.; 2d. Supp. Adler Decl.)  According to Puccio, the Funds' Collections Department staff is responsible for ensuring that the hundreds of employers who contribute to the Funds each do so in a timely and accurate manner.  (ECF No. 11, Supp. Puccio Decl. ¶ 2-3.)  For each reporting period when an employer fails to submit contributions, the Collections Department demands payment from that employer.

### A.   *Contributions Due*

#### 1.   Unpaid Amounts Reflected in Remittance Reports

ERISA section 502(g)(2)(A), 29 U.S.C. § 1132(g)(2)(A), provides for an award of unpaid contributions by Defendant.  The Trust Agreement does as well.  Plaintiffs request unpaid contributions in the amount of $520,882.50 based on submitted remittance reports for the months of October 2020 through February 2022 and May 2022 through June 2022.  (*Id*. ¶ 23, Exh. E, Remittance Reports, 44-62.)

#### 2.   Amounts Estimated from Remittance Reports Not Submitted

For the months that Defendant did not submit remittance

reports, pursuant to the Trust Agreement, Defendant must pay an estimated monthly contribution, which is computed by adding 10% to the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) months of remittance reports submitted by the Company and then multiplying the hours by the applicable Fund contribution rate. (ECF No. 11, Supp. Puccio Decl. ¶ 25.)   Defendant did not submit remittance reports for the months of March 2022 and April 2022. (*Id.* ¶ *24*.) The estimated contributions for the March 2022 and April 2022 missing remittance reports are $87,554.00. (*Id.* ¶ 30; Exh. E, Remittance Reports, 49-60.)

### 3. Late-Paid Contributions Reflected in Remittance Reports

Defendant also made payments late, by paying the contributions due for various months between June 2017 and May 2021 after their respective due dates. (*Id.* ¶ 32; Exh. E, Remittance Reports, 2-51.)   As set forth below in Section B, Defendant must pay interest on late contributions.   29 U.S.C. § 1132(g).

### B. Interest on Unpaid Contributions, Estimated Contributions, and Late-Paid Contributions

Plaintiffs are entitled to interest on Defendant's unpaid remittance reports, estimated contributions, and late-paid contributions.   29 U.S.C. § 1132(g)(2)(B).   The statute provides that "interest on unpaid contributions shall be determined by using

the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26 [the Internal Revenue Code of 1986.]"   29 U.S.C. § 1132(g)(2).   Here, the Trust Agreements provide for interest to be charged on delinquent contributions at the rate of 1.5% per month, or 18% per year.   (ECF No. 12, 2d. Supp. Adler Decl. ¶¶ 13-14.)   Interest is calculated from the date due, and for each of the Funds separately by (1) taking 18% of the monthly contribution amount, (2) dividing that number by 365 days to determine the per diem (daily) interest rate, and (3) multiplying the daily interest rate by the number of days between the date the contributions were due, and if still unpaid the date the interest calculation was performed or if late-paid, the date of payment.   (*Id.* ¶¶ 11-12.)   The interest was calculated for unpaid contributions based on submitted remittance reports, on estimated contributions, and on late-paid contributions.   (*Id.* ¶ 13.)

In total, Plaintiffs seek interest of $262,035.46 on the total amount of unpaid, estimated, and late-paid contributions.   In addition, interest on the $608,436.49 in contributions remaining due continues to accrue beginning August 18, 2022, at the daily rate of $300.05, calculated as follows: $608,436.49 x .18 / 365.   (*Id.* ¶ 14.)   This number was calculated by utilizing a method previously accepted in this District: taking the number of days for which interest is due and multiplying it by the daily interest rate

16

(the amount of delinquent contributions × 0.18 (yearly interest) /365 days). *See, e.g., Gesualdi v. Reliance Trucking of CG Inc.*, No. 14-cv-4112, 2015 WL 1611313, at *11 (E.D.N.Y. Apr. 10, 2015). In addition, because the principal amount remains outstanding, daily interest at that rate should continue to accrue for each day until judgment is entered. *Id.* Accordingly, the Court awards Plaintiffs interest as requested in the amount of $262,035.46, plus $300.05 per day, starting August 18, 2022.

### C.   *Liquidated Damages*

Plaintiffs are entitled to liquidated damages on the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). ERISA and the Trust Agreement Defendant entered into permits the Court to award liquidated damages equal to the greater of either: (1) the interest on the unpaid contributions; or (2) the amount designated by the CBA (up to 20 percent of the delinquent contributions). 29 U.S.C. § 1132(g)(2)(C)(i)-(ii); (ECF No. 11, Supp. Puccio Decl., Exh. A., Trust Agreement, 28.) Plaintiffs request $131,888.21 in liquidated damages, broken down as follows: (a) $114,377.41 in liquidated damages on unpaid contributions based on submitted remittance reports; and (b) $17,510.80 in liquidated damages for unpaid estimated contributions. (ECF No. 16, 2d. Supp. Adler Decl. ¶ 17.) The liquidated damages calculation is further broken down in the chart provided by Plaintiffs (below), reflecting where the

Plaintiffs applied either the interest or 20 percent, whichever was greater, of the contribution due for each period Defendant did not pay or provide a report. (*Id.* ¶ 18.) Thus, the liquidated damages to be awarded to Plaintiffs total $131,888.21.

| Referral Period | Contributions Due | Interest | Liquidated Damages |
|---|---|---|---|
| 10/31/2020 | $32,971.07 | $9,674.52 | $9,674.52 |
| 11/30/2020 | $36,693.51 | $10,223.92 | $10,223.92 |
| 12/31/2020 | $23,914.44 | $6,297.69 | $6,297.69 |
| 1/31/2021 | $31,751.40 | $7,876.09 | $7,876.09 |
| 2/28/2021 | $20,551.60 | $4,814.14 | $4,814.14 |
| 3/31/2021 | $21,681.08 | $4,747.27 | $4,747.27 |
| 4/30/2021 | $19,188.86 | $3,917.68 | $3,917.68 |
| 5/31/2021 | $24,454.74 | $4,618.93 | $4,890.95 |
| 6/30/2021 | $25,347.82 | $4,412.60 | $5,069.56 |
| 7/31/2021 | $28,988.81 | $4,603.26 | $5,797.76 |
| 8/31/2021 | $39,797.27 | $5,711.18 | $7,959.45 |
| 9/30/2021 | $33,812.14 | $4,352.04 | $6,762.43 |
| 10/31/2021 | $36,986.64 | $4,195.20 | $7,397.33 |
| 11/30/2021 | $24,181.68 | $2,385.04 | $4,836.34 |
| 12/31/2021 | $25,291.56 | $2,107.86 | $5,058.31 |
| 1/31/2022 | $26,009.58 | $1,770.08 | $5,201.92 |
| 2/28/2022 | $24,119.86 | $1,308.42 | $4,823.97 |
| 3/31/2022 | $43,777.00 | $1,705.50 | $8,755.40 |
| 4/30/2022 | $43,777.00 | $1,057.84 | $8,755.40 |
| 5/31/2022 | $25,286.94 | $224.46 | $5,057.39 |
| 6/30/2022 | $19,853.50 | | $3,970.70 |
| **Totals** | **$608,436.50** | **$86,003.74** | **$131,888.21** |

**D.   *Attorney's Fees and Costs***

Section 502 of ERISA provides that a plaintiff may recover attorney's fees in any action to enforce a judgment to recover delinquent contributions.  29 U.S.C. § 1132(g)(2)(D). Courts in this Circuit award attorney's fees to a prevailing party by calculating the "presumptively reasonable fee." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009).  The Court

determines the presumptively reasonable fee by multiplying the number of hours the attorney spent on the litigation by "a reasonable hourly rate." *Gesualdi v. Interstate Payroll Co., Inc.*, 2:14-CV-06780, 2019 WL 109379, at *7 (E.D.N.Y. Jan. 4, 2019) (citing *Hensley v. Eckerhart* 461 U.S. 424, 433 (1983)). A reasonable rate is "the rate a paying client would be willing to pay," based on the "prevailing [hourly rate] in the community . . . where the district court sits." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany and Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008); *see also Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984) ("[T]he requested rates [must be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.").

As a general matter, in determining appropriate attorney's fees, the "starting point" for calculating a "presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting *Arbor Hill Concerned*

19

*Citizens Neighborhood Ass'n.*, 522 F.3d 182, 183 (2d Cir. 2008)).
The Supreme Court has held that "the lodestar method produces an
award that roughly approximates the fee that the prevailing
attorney would have received if he or she had been representing a
paying client who was billed by the hour in a comparable case."
*Perdue v. Kenny A. Ex rel. Winn.*, 559 U.S. 542, 551 (2010)
(emphasis in original). "The lodestar figure includes most, if not
all, of the relevant factors constituting a 'reasonable attorney's
fee'." *Id*. at 553 (citation omitted); *see Arbor Hill Concerned
Citizens Neighborhood Ass'n.*, 522 F.3d at 184, 190-91 (holding a
court determines a "presumptively reasonable fee" by considering
case specific factors in order to establish a reasonable hourly
rate that a "reasonable, paying client would be willing to pay,"
and then multiplying that rate by the number of reasonable hours).
This assessment is undertaken "bear[ing] in mind that a reasonable,
paying client wishes to spend the minimum necessary to litigate the
case effectively." *Arbor Hill Concerned Citizens Neighborhood
Ass'n.*, 522 F.3d at 190. The reasonableness of hourly rates is
guided by the market rate "[p]revailing in the community for
similar services by lawyers of reasonably comparable skill,
experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11
(1984), and the relevant community is generally the "district in

which the court sits," *Polk v. New York State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983).

Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments*, LLC, 852 F. Supp. 2d 281, 291 (2012), and this Circuit requires contemporaneous billing records for each attorney, *see Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." *Perdue*, 559 U.S. at 552.

In the instant case, Plaintiffs retained the services of Cohen, Weiss & Simon LLP, which billed the Funds for legal services totaling $9,004.50, comprised of $8,530.50 in attorney's fees and $474.00 in costs. (ECF No. 16, 2d. Supp. Adler Decl. ¶ 19.) To support Plaintiffs' request for attorney's fees and costs, Plaintiffs submitted two declarations of Michael S. Adler, Esq. with contemporaneous billing records annexed to the declarations. (ECF Nos. 12, Supp. Adler Decl. dated August 4, 2022 and exhibits; 16, 2d. Supp. Adler Decl.)

The Court finds that Plaintiffs' submission provides sufficient evidence to form the basis for an award of legal fees and costs without a further hearing. From October 2021 through

July 2022, Plaintiffs seek reimbursement for legal services rendered by Mr. Adler, law firm partner and attorney for Plaintiffs, at the rate of $305 per hour; and paralegals at the rate of $110 per hour.[3] (ECF No. 16, 2d. Supp. Adler Decl. ¶¶ 19-22; Exh. A, Invoices.)  The Court finds that the billing rate for the Plaintiff's counsel and paralegals falls within the parameters set forth by courts in the Eastern District of New York.  *See Gesualdi v. Seacost Petroleum Prod.*, Inc., 97 F. Supp. 3d 87, 108 (E.D.N.Y. 2015)(counsel at a rate of $300 and paralegal at a rate of $110); Gesualdi v. East Bay Contracting Corp., No. 14-cv-4429, 2015 WL 5562560, at *7 (E.D.N.Y. Sept. 4, 2015), report and recommendation adopted By, 2015 WL 5562688 (E.D.N.Y. Sept. 21, 2015)(counsel at a rate of $395 per hour and paralegal at a rate of $110 of hour); *Gesualdi v. Pecgro Trucking, Inc.*, No. 14-cv-6347, 2015 WL 5608149, at *7 (E.D.N.Y. Aug. 13, 2015), report and recommendation adopted By, 2015 WL 56081157 (E.D.N.Y. Sept. 23, 2015) (counsel at a rate of $265 per hour and paralegal at a rate of $105 per hour).

Several case-specific factors, however, weigh against an attorney's fee at a rate of $305 for Mr. Adler.  The instant action was a garden variety ERISA default judgment involving relatively straightforward claims and uncomplicated facts.  The limited

---

3 Plaintiffs' counsel did not utilize associates for this case.  (ECF No. 16,

22

complexity and demands of this case were such that counsel would not have been precluded from accepting other cases. District courts have the legal authority and discretion to either reduce an attorney's hourly rate for time spent on routine clerical tasks, or apply an across-the-board reduction to the hours billed or to the total fee award to account for time spent on clerical tasks. *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019). Deductions are warranted for attorney time spent on administrative tasks or work that should have been performed by lower-billing attorneys. *De La Paz v. Rubin & Rothman, LLC*, No. 11-cv-9625(ER), 2013 WL 6184425, at *4 (S.D.N.Y. Nov. 25, 2013). Considering that several tasks (calculating amounts, preparing exhibits, drafting motions with extensive precedent from Mr. Adler's own practice alone) could have been completed by an attorney with less experience such that a reasonable paying client would not be willing to pay Mr. Adler's regular rate, the Court finds that an hourly rate of $290 is reasonable for Mr. Adler.

Having determined the reasonable hourly rates of $290 for attorneys and $110 for paralegals to be applied in this case, the Court now turns to the reasonableness of the hours billed. "The number of hours counsel spends on an action will be determined unreasonable if found to be excessive, duplicative, or

---

2d. Supp. Adler Decl. ¶ 19; Exh. A, Invoices.)

unnecessary." *Finkel v. Metro Sign & Maint. Corp.*, No. 09 CV 4416, 2010 WL 3940448, at *16 (E.D.N.Y. Aug. 12, 2010) (citing *Labrera v. Frank J. Batchelder Transp. LLC*, No. 08-cv-3387, 2009 WL 245021, at *4 (E.D.N.Y. Feb. 2, 2009)).  Here, the most recent record reflects that the attorney spent a total of 25.3 hours on this matter, and the paralegals expended a total of 7.4 hours.  (ECF No. 16, 2d. Supp. Adler Decl. ¶ 20.)  The time records submitted here describe the attorney and paralegal performing tasks such as drafting demand letters, preparing motion papers, communications with the parties, and preparing the records for the default motion.  (*Id.*, Exh. A, Invoices.)  The contemporaneous billing records submitted to this Court also show the dates on which such tasks were performed and the amount of time expended per task.  (*Id.*)  I find the tasks completed and time expended reasonable.

Plaintiffs also seek costs incurred in the amount of $474.00, including a court filing fee of $402.00 and $72.00 for service of process upon Defendant.  (ECF No. 16, 2d. Supp. Adler Decl., Exh. A at 19-20, Invoice for Filing and Service.)  *See Trs. of Local 7 Tile Industry Welfare Fund v. Amarko Marble & Granite Co.*, No. 13-CV-2779, 2014 WL 1622098, at *11 (E.D.N.Y. Apr. 22, 2014) ("Generally, reasonable costs may be recovered by the prevailing party in an ERISA action.").  I find the amount sought for costs is reasonable as well.

Accordingly, the Court awards Plaintiffs attorney's fees and costs in the amount of $8,625 ($8,151 in fees plus $474.00 in costs).

## CONCLUSION

Accordingly, Plaintiffs' motion for a default judgment against Zano Industries, Inc. is granted.  The Clerk of Court is respectfully requested to enter a default judgment against Defendant in the amount of $1,009,409.12 reflecting the following awards to Plaintiffs: (1) $608,436.50 in contributions due; (2) $260,079.91 in interest (through August 18, 2020); (3) $131,888.21 in liquidated damages; (4) $8,625 in attorney's fees and costs.  In addition, Plaintiffs should be awarded $300.05 per day, commencing August 18, 2022 until entry of judgment after which date post-judgement interest will accrue.  Interest shall accrue at the post-judgment rate prescribed by law.  28 U.S.C. § 1961.  Plaintiffs are hereby ordered to serve a copy of this Memorandum and Order and the Judgment upon Defaulting Defendant Zano Industries, Inc. at its last known address and to file proof of service with the Court within two business days of the date of this Order.  The Clerk of Court is respectfully directed to close the case.

**SO ORDERED.**

Dated:   September 14, 2022
         Brooklyn, New York

                                    _____/s/_____
                                    **Kiyo A. Matsumoto**
                                    United States District Judge
                                    Eastern District of New York

26